Stark, Appellant, *v.* Fullerton Trucking Co. et al.

Argued May 14, 1935. Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

542

*Chas. W. Eaby,* for appellant.

*Harris C. Arnold,* with him *John A. Coyle,* for appellee.

PER CURIAM, May 27, 1935:
On June 21, 1932, at about 9 p. m. daylight saving time, a heavily-laden truck of the Fullerton Trucking Company, one of the defendants, was traveling eastwardly on the Lincoln Highway, a public road of this Commonwealth. When the truck reached a point some three miles east of the City of Lancaster, where the highway runs eastwardly down hill, it broke down at or near the foot of the hill. The means for repairing the injury not being available from a point nearer than New York, the truck had to remain stalled where it was, until those means came to it from that city. About 4 : 35 a. m. daylight saving time of the next day, another large truck, owned by S. Novey, the other defendant, and carrying a used or injured automobile, came over the hill and ran down into the stalled truck. Five or ten minutes later, still another but smaller truck, owned by the Shock Independent Oil Company, and being driven by one Howard Stark, also came over the top of the hill, ran down it, plunged into the rear of and ran under the Novey truck, and immediately burst into flames. Howard Stark, the driver, who was the husband of Romain M. Stark, the plaintiff, died as the result of the burning he then and there received.

Mrs. Stark sued the Fullerton Trucking Company and S. Novey, to recover damages for the death of her husband. At the ensuing trial she was nonsuited, so far as concerned S. Novey, but recovered a verdict against the Fullerton Trucking Company. Subsequently, the court in banc entered a judgment non obstante veredicto in favor of the Fullerton Trucking Company, because of the alleged contributory negligence of plaintiff's husband, and refused to set aside the nonsuit in favor of S. Novey.

She thereupon appealed, assigning as error the entry of judgment non obstante veredicto. No complaint is made respecting the nonsuit in favor of S. Novey. The judgment must be affirmed.

It is more than doubtful whether there was any evidence of the negligence averred in the statement of claim as against the Fullerton Trucking Company, appellee, but we prefer to plant our affirmance of the judgment non obstante veredicto on the reason given by the court below for entering it.

As already stated, the two collisions took place at 4 : 35 a. m. and 4 : 40 or 4 : 45 a. m. daylight saving time on June 22, 1932. This was one of the longest days of the year, and, as every one knows, daylight is breaking at that time on that day. All of the witnesses who testified on the point agree as to this. The day was clear, and some say they could and did then see 435 feet, from the top of the hill to the place of the collisions. Others, not disagreeing therewith, say that they plainly saw what is known as the Wickersham House, which was a block away. No one disputes these statements.

There is no explanation as to why decedent ran into the Fullerton and Novey trucks, which were at rest near the bottom of the hill, since the road was wide enough for them to have been passed by without a collision. There were warning lights on the stalled trucks, and signal lights all along the road up to and on top of the hill. In order to recover, appellant was required to show some neglect of appellee, which accounted for the accident, if she desired to hold appellee liable for it. This she did not do. Her contention seems to be that she can recover simply because her husband did not expect to find cars stalled at that point. This will not suffice, however. By section 1002 of The Vehicle Code of May 1, 1929, P. L. 905, 973, as amended by the Act of June 22, 1931, P. L. 751, 791, it is provided that "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reason-

able and proper, having due regard to the traffic, surface and width of the highway, and of any other restrictions or conditions then and there existing; and no person shall drive any vehicle upon a highway at such a speed as to endanger the life, limb or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead." This implies that the driver will always be carefully watching so much of the road as is included within that "assured clear distance ahead," and will always keep his car so under control that he can stop it within that distance. What this will be, of course, will vary according to the visibility at the time and other attending circumstances, but, after taking those circumstances into consideration, the requirement is fixed and unchangeable. There is no excuse for a failure to obey the statutory requirement unless the obstacle in front is for the first time in the driver's view, after the car has passed the point where the "assured clear distance ahead," quoad that point, has been reached and passed, and the obstacle is then too close to be avoided. This can never be where, as here, the dangerous object is standing still before the outer limit of the "assured clear distance ahead" has been reached, and continues in that one position. It is no answer to say, as appellant seems to attempt here, that decedent had no reason to expect a stalling on the highway of the automobiles into which he crashed. The statute was passed to protect life and limb; decedent was bound to guard, to the extent stated, against that and every other possibility, and the statute must be construed and applied to further that purpose. It may be conceded that ordinarily decedent's death would raise a presumption that he had taken all necessary precautions for his own safety, but this presumption has no existence as against the certainty that if he had done so here he would not then have died: Tull v. B. & O. R. R. Co., 292 Pa. 458, 461.

The judgment of the court below is affirmed.